By the Court:

Jones, J.
The only question raised and argued at the General Term, on appellants’ behalf, and submitted for the decision of the court, is : Whether the person named and appointed as trustee in an instrument dated September 16,1830, and made and executed by and between Joseph Delacroix, of the first part, and Thomas Edward Tucker, of the second part, under their respective hands and seals, had power upon the request, direction, and appointment of Sophia Davis, to convey the said premises free and discharged of and from all right, title, and interest therein of the children of said Sophia.
The solution of the question involved depends on the proper construction to be given to the instrument.
There were two pieces of property conveyed by the instrument in question; one in Westchester county, the other (being the premises in question) in the city of blew York. ,
The provisions in relation to each are substantially different.
With regard to the Westchester property, the provision is “ to sell and corwey to such person, and for such consideration as said Sophia shall direct, and pay the proceeds to her on her own receipt as if she were sole?
The provisions in regard to the blew York property are:
1st. To let the same and pay the rent or proceeds to said Sophia, upon her own receipt, as if she were sole, for and during her natural life.
2d. To make and deliver all or any deed or deeds of corwey anee or partition, as said Sophia might direct.
3d. To surrender old leases and accept and make new ones, as said Sophia may direct; “ so, however, that said partitions and new leases shall follow the trusts herein and hereby declared.”
4th. To grant, assign, and set over the premises unto such person or persons as said Sophia might direct; “so, however, that *743 the trust in favor of said Sophia’s children and their interest in the remainder be preserved.”
5th. That immediately on the death of said Sophia the trustee, or whomsoever to whom the trust estate in Barclay street, Murray and Chapel streets, and the lease from Bobert Swanton (being the Yew York property), may have been assigned, shall in due form of law convey the said Yew York property “ to the children of said Sophia in equal parts, the lawful issue of those deceased to take a parent’s portion, it being the intention of these presents that the said Sophia take and receive the interest or income of those estates during her life, for her sole and separate use, and that the principal thereof remaining, after her death, go and belong to her said children as aforesaid, and for no other use or purpose whatsoever.”
There are two other provisions which seem to apply to both the Westchester and Yew York county property. One, that said Sophia might use, occupy, and enjoy such part of the assigned property as she might require and see fit during her natural life; the other, giving the trustee, named in the instrument, power to appoint such agents to manage the trust estate as the said Sophia should direct and appoint.
The difference between the provisions respecting the Westchester county property, and those relating to the Yew York property, clearly shows that the grantor intended the disposition to be made of the one, as entirely distinct from that to be made of the other.
It is evident that the whole interest in the Westchester property was given to Sophia for her sole use and benefit; while in contradistinction to this she is given a life estate only in the Yew York property, the remainder limited on that life estate being given to her children.
It is, however, urged that in construing a deed effect must be given to all the words contained therein, and therefore effect must be given to the words “conveyance of” in the above second clause, and the words “ interest ” and “ principal thereof remaining ” in the last clause. It is then claimed that giving effect to *744 them, while still bearing in view the intent that the children only shall have, and be interested in the principal, the design is found to be that the property may be sold, that its proceeds shall stand in its place, that Sophia shall receive the interest on said proceeds, that the principal may be applied to the support of the children, and “ the principal thereof remaining shall go to the children.”
Upon examining this proposition, we find that it is stating the doctrine too broadly to say that effect must be given to all the words in a deed. The correct statement is that a deed should be so construed as to give effect to all its words and provisions if possible, but that the construction should be on the whole instrument, and should, if possible, be so expounded as to give effect to the intentions of the parties (Moore v. Jackson, 4 Wend., p. 67).
And therefore the intent, when apparent and not repugnant to any rule of law, will control technical words; for the intent and not the words is the essence of every agreement (Jackson v. Myers, 3 I. R., 39).
Upon these general principles words have been rejected as surplusage (Sanders v. Betts, 7 Wend., p 287; Jackson v. Frost, 5 Cow., p. 346).
And the grammatical sense has been made to give way to its true intent, as when the word “ and ” has been construed into “or,” and vice versa (Jackson v. Joppin, 1 Wend., 397; Long Island R. R. Co. v. Conklin, 32 Barb., 381; White v. Crawford, 10 Mars., 183).
The rule then appears to be to give effect to the words, expressions, and provisions which carry out the evident intent of the instrument, rather than to those others which are inconsistent therewith, and either to reject such others as surplusage of repugnant, or to mould them into consistency with the intent, provided in so doing no rule of law is violated.
Under this exposition of the rules of law, bearing on the construction of instruments, let us first inquire what is the evident intent of the provisions of the instrument in question.
*745 We find that as to the other property the grantor gave specific direction for the sale thereof, and as to the proceeds, viz.: that they should be paid to Sophia on her sole receipt, as if she were sole.
But as to the property in question (throwing out for the present the above-mentioned second clause) he directs that the trustee, or whomsoever to whom the trust estate may have been assigned, convey in due form of law, all and singular the trust estate to the children of Sophia, and is particularly careful to provide that all new leases of the premises, or any partition thereof (he being a tenant in common), shall follow said trust, and that any grant, bargain, assignment, transfer and setting over thereof should be in such wise, as that the trust in favor of said Sophia’s children and their interest in the remainder shall be preserved. All these are clear and distinct provisions looking to the property itself being conveyed to the children, and its preservation to that end.
This strong evidence of the grantor’s intent is sought to be overcome by the use of the phrase “ deed or deeds of conveyance or partitionand the use of the words “ interest ” and “ principal thereof remaining,” in the very clause which calls for a conveyance of all the property, and the recitals.
The word “ conveyance ” as used in the above phrase is meaningless, there is no such thing known in the law as a deed of conveyance.
(Willard on Real Estate, p. 419.)
Deed and conveyance are convertible terms; one means no more than the other. What sort of a conveyance is it that is thus authorized % Is it a conveyance of grant, of lease, or of exchange % It may be any one of them.
If we look at the whole instrument to endeavor to ascertain a specific meaning to be attached to the word, we find that in relation to other property the grantor gave a power “ to sell and in due form convey,” and gave directions for the disposal of the proceeds of the sale. If it had been the intention to give a power to sell, and convey pursuant thereto, in relation to this property, what *746 is more natural than to pursue the same course as was just above pursued ? It cannot have been intended to authorize a conveyance without a sale and without consideration, as the effect of that would be to deprive the children of all interest without any compensation. The grantor then cannot be deemed to have the word as indicating a deed of grant.
Again, if a word used in an instrument has no meaning in the connection in which it is used, and we look into the whole instrument to ascertain in what sense it was used, we must ascribe to it a meaning which will be consistent with other express provisions of the instrument. If none such can be found the word must be treated as surplusage, for the court will not seek to give by implication a signification to a word of uncertain meaning, which will conflict with express words of a definite signification.
If, then, no meaning can be assigned to this word which will be consistent with the clause requiring a conveyance to the children, it must be treated as surplusage.
I think, however, a meaning can be assigned consistent with that clause.
The grantor, in the clause in which the word is used (and in subsequent clauses), treats of the subject of partition, while in the following clause he treats of conveyances other than for partition. Now, a partition may be effected in a proper case by a deed of exchange. Giving this signification to the word, as used in the clause in question, it renders it consistent with all the other provisions of the instrument. Again, the words, “ or partition,” may well be regarded as qualifying the previous general term of “ conveyance,” and indicating the kind of conveyance intended; on which theory of course the words “ conveyance or ” become surplusage.
I am satisfied that these words must be considered either as surplusage or as indicating a conveyance of exchange for the purpose of partition.
As to the use of the words “ principal thereof remaining,” the grantor had just before directed the whole principal to be conveyed to the children. Construed in reference to this the *747 words may well be deemed as equivalent to the expression “ the principal thereof to remain and go to the children.” The expression used is awkward, but in one aspect it merely carries the same idea which the above form does. This construction is certainly preferable to one which, while being antagonistic to the first part of the clause in which it appears, would possibly have the effect of depriving the children of all interest in the property. It should be remembered further, that no provision is made for the use or disposition of any part of the proceeds of the principal during Sophia’s life, whereby a balance might be left after such use or disposition.
The word “ interest ” is, it is true, ordinarily used in the sense of a percentage paid for the use of money. It is, however, included in the word that follows it, “ income,” which is a term of more extended signification. It means no more. TaMng the two words in connection, the intent as shown thereby is that Sophia shall receive the profit coming in from the use of the property, or in case of a sale from the use of the proceeds which should be substituted for it. It may be said that the use of the word contemplates the possibility of sale; so would the use of the word income. But if it does, there is no reason for referring it to the proceeds of a sale by the trustee, inasmuch as the property being held in common, there was a possibility of a sale under decree in partition.
There is nothing in the recital which requires such construction to be given as will authorize a conveyance in such form as will deprive the children of a right to the conveyance of the whole.
That recital is as follows :
“ Whereas, the said Joseph Delacroix has, on account of the destitute situation of his daughter, Sophia, the wife of Morgan Davis, concluded to settle, for her sole and separate use, the estate and property hereinafter mentioned, to enable her to support herself, and to educate and bring up her infant children for and during the natural life of the said Sophia, and immediately after her death the then remaining estate and property to *748 the use of her children, in equal parts, the issue of those deceased to receive a parent’s portion, which said estate and property the said Joseph deems of about the same amount in value as that which he intends by his will to devise to his other children.” , /
This recital indicates the general design the grantor had in view ; but it does not point out the particular mode in which he intended to carry out that design.
The mode which he did adopt was to give Sophia the Westchester property out and out, and to give her the income arising from the New York property, leaving the last mentioned property, and that alone, to go to the children; for it will be observed that there is no provision that on Sophia’s death the Westchester county property, or any then remaining proceeds thereof, should go to the children.
I am, therefore, of opinion that the clear intent of the instrument is that the New York property should not be sold by the trustee ; nor should the same be conveyed in any manner except to Sophia’s children, on her death, and that it should be conveyed to the children on the happening of that event.
The question now arises: Will the carrying out this intent violate any rule of law ?
It is claimed that a settled rule which obtains in the construction of deeds will be violated, viz.: that where a subsequent clause is repugnant to a prior one the subsequent one will be held void.
- This principle is sought to be applied to the present case, thus: All the clauses looking to a conveyance of all the New York property to the children, are subsequent to the clause authorizing any “ deed or deeds of conveyance or of partition, as the said Sophia may. in writing direct or appoint.”
If, then, they are construed as depriving her of the right of appointment, they are repugnant to the clause giving such right, and consequently they cannot be so construed.
The principle thus invoked has no application to the present case.
*749 In the eases which enunciate this doctrine it appeared that the subsequent clause would prevent a previous grant, made in such clear and unmistakable terms as to leave no room for construction, from operating to pass the property, estate, or right so granted.
In such cases the question was whether the grant or the subsequent clause should fail. Choice had to be made between the alternatives. There was nothing on which to determine the choice, except the position of the clauses.
The doctrine was therefore established as to such cases, that as the grantor had made his grant he should not be allowed to subsequently destroy it.
But the rule did not prevail where there was room for construction. Thus, if the grant be in general terms, and the subsequent clause except a particular thing thereout, the exception is good, although the thing excepted may be covered by the general terms, for there is still sufficient left for the grant to operate on.
Thus, if there be a demise of a parsonage with lands and woods except the woods, the exception is void, for otherwise the grant of the woods could not operate. If, however, the woods had not been specially mentioned, the exception would have been good; for although the word lands include every thing thereon, yet they may be granted without including any particular thing that may be thereon; therefore, although the woods are excepted, still there is enough for the grant to operate on, viz., the lands without the woods (Moore, 881).
To the same effect is Bacon’s Ab., Title Grant, p. 527.
In the present case the estate granted to the grantee will not be destroyed or in any wise affected by striking out the whole clause in which the words in question occur. The provisions made subsequent to the granting of the estate are but directions as to how that estate shall be disposed, and the question is as to which of these directions shall prevail.
The principle suggested by appellants’ counsel does not therefore apply to this case as a positive rule of law. Even if it did apply, still it would afford no warrant for holding those subsequent clauses which look to the conveyance of the whole of the *750 Hew York property to tlie children to be void, for the prior clause does not give a power to convey to the prejudice of the subsequent one in so clear and unmistakable a manner, nor is the instrument so devoid of data as to leave no room for construction except such as can be founded on the position of the clauses.
If this prior clause gave in a clear and unmistakable manner a power to convey on the appointment of Sophia, and by the conveyance to destroy the power given by the subsequent clause to convey to the children, and there was nothing to determine which power should have the precedence, except the positions in the instrument of the clauses conferring them, I should most certainly hold, in analogy to the doctrine urged by appellants’ counsel, that the power first given took precedence, and that the subsequent power, so far as it conflicted with the first, was void.
Lastly, if the principle in question is to be regarded as a positive rule of law, applicable to the construction of this instrument, and we are to he required by its operation to override the clear and positive requisitions of the subsequent clauses by reason of their repugnancy to the prior one, then the technical rules and language of the law should be applied to the construction of that prior clause.
Under that technical language there is (as before observed) no such thing as a “ deed of conveyance.” A deed is a conveyance itself. There are various kinds of deeds, and among them a deed of partition (Willard on Real Estate, p. 419).
The words “conveyance or” may then be rejected as surplusage and meaningless in the connection in which they are used.
Upon this construction no repugnancy is found.
There is then no rule of law which will be violated by carrying out the above adjudged intent of the instrument.
That intent must therefore prevail, and as a consequence thereof the defendants cannot defend their possession under a title derived from the trustee on which they rely.
Judgment affirmed with costs.
Monell, J., took no part in the decision.